UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

    Before the court is the Government's motion for an anonymous and semi-sequestered jury. For the reasons set forth below, the motion is GRANTED.

## I.    BACKGROUND[1]

    Defendant Ronell Wilson faces a penalty proceeding during which a jury will determine whether he will be sentenced to death or to life in prison without the possibility of release. Beginning on April 3, 2013, prospective jurors will fill out a questionnaire that has been developed with, and approved by, the parties. Voir dire is scheduled to start on April 17, 2013. The penalty phase itself is to begin on May 20, 2013, or as soon as possible after voir dire has been completed.

    On March 6, 2013, the Government moved for an anonymous and partially sequestered jury. (Mar. 6, 2013, Gov't Ltr. (Dkt. 1042).) On March 14, 2013, Wilson filed a letter that, although "disput[ing]" the necessity of an anonymous and semi-sequestered jury, offered "no new arguments to interpose." (Mar. 14, 2013, Def. Ltr. (Dkt. 1055) at 1.) Instead, Wilson "urge[d] the Court in conducting voir dire . . . to explore with the *venire* the possibility that

---

[1]     The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

prospective jurors have been exposed to prejudicial media coverage that could unfairly impact their capacity to fairly and impartially assess the evidence." (Id.)

## II.    DISCUSSION[2]

"[W]hen genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007) (citation omitted).  The same is true for partially sequestered juries.  See United States v. Gotti, 459 F.3d 296, 345-46 (2d Cir. 2006) (applying the same standard to the defendant's challenge to the use of an anonymous and partially sequestered jury).

In its discretion, "'a court may order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'"  United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012) (citation omitted).  If both criteria are met, the court has properly "'balance[d] the defendant's interest in conducting meaningful *voir dire* and in maintaining the presumption of innocence against [the jury's] interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict.'"[3]  Quinones, 511 F.3d at 295 (alteration in original) (quoting United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994)).

---

[2]    Even though Wilson offered "no new arguments" against the use of an anonymous and semi-sequestered jury (and agreed that the jurors "may be subject to intense media attention" and therefore "concur[red] that their names and addresses should not be publicly released" (see Mar. 14, 2013, Def. Ltr. at 1)), given his oblique objection to the Government's motion (see id.), the court will fully examine the merits of the issue.

[3]    Courts typically are concerned that the use of an anonymous and semi-sequestered jury may infringe the defendant's presumption of innocence.  See Quinones, 511 F.3d at 295.  Because Wilson has already been found guilty, the same concern does not strictly apply.  Nonetheless, the use of an anonymous and semi-sequestered jury could improperly alter the Government's burden to prove that:  (1) a statutory aggravating factor exists beyond a reasonable doubt; and (2) if so, this (and any other aggravating factor established beyond a reasonable doubt) outweighs any proven mitigating factor and warrants imposition of the death penalty.  See 18 U.S.C. §§ 3592(a), 3593(c), (e); see also United States v. Fell, 531 F.3d 197, 216, 237-38 (2d Cir. 2008).  Accordingly, despite this case's unusual procedural posture, in an abundance of caution the court will apply the standard that is most often used to determine whether to empanel an anonymous and semi-sequestered jury that will decide a defendant's guilt.

### A. Need to Protect the Jury

To determine whether there is a "strong reason" to believe that the jury needs protection, the court examines the following four factors: (1) whether there is "a 'demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf'" Pica, 692 F.3d at 88 (quoting United States v. Vario, 943 F.2d 236, 241 (2d Cir. 1991)); (2) "the seriousness of the crime," Quinones, 511 F.3d at 296; (3) the likelihood of pre-trial publicity, id.; see also Vario, 943 F.2d at 240 (explaining that "[p]re-trial publicity may militate in favor of an anonymous jury because it can 'enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public'" (citation omitted)); and (4) whether the defendant has access to means to harm the jury, see United States v. Melendez, 743 F. Supp. 134, 137 (E.D.N.Y. 1990).

To begin, the court notes that it ordered that the jury that decided Wilson's guilt (and his original sentence, which has since been vacated, see Whitten, 610 F.3d at 205) be anonymous and semi-sequestered. United States v. Wilson, 493 F. Supp. 2d 397 (E.D.N.Y. 2006). In doing so, the court identified six facts that evidenced a need to protect the jury: (1) Wilson faced charges "of the utmost seriousness, indeed as serious as any charge can be, [which] demonstrate both the extreme dangerousness of the defendant and a willingness to obstruct justice," id. at 399; (2) Wilson was charged with being "part of a criminal enterprise known as the 'Stapleton Crew,' a violent organization that engages in acts of robbery, murder and narcotics trafficking," which was confirmed by Wilson's co-defendants' allocutions, id. at 399-400; (3) members of the Stapleton Crew were believed to be at large at the time of trial and "in a position to interfere with the jury," id. at 400 (citing Shelton Aff. (Dkt. 136) ¶ 4); (4) while incarcerated at Rikers Island in 2006, Wilson had "'ordered another prisoner to attack a corrections officer and the other prisoner

3

did so,'" id. (quoting Shelton Aff. ¶ 5); (5) there were documented "instances of Wilson's criminal associates having attempted to 'coerce witnesses not to testify or cooperate with authorities,'" including a May 2006 incident, id. (quoting Shelton Aff. ¶ 7); and (6) the extensive media coverage, id. The court concluded that these facts established that "maintaining anonymity of the members of the jury and sequestering the jury as they travel to and from the courthouse and during recesses [was] the only appropriate way to adequately protect them." Id.

These facts remain applicable (see Shelton Aff. ¶¶ 3-5, 7-8; Mar. 6, 2013, Gov't Ltr. at 1-3), and, tellingly, uncontested (see Mar, 14, 2013, Def. Ltr. at 1 ("[W]e have no new arguments to interpose.")). Even taking into account the passage of time since the first trial, the use of an anonymous and semi-sequestered jury is necessary to ensure the jury's safety. Wilson's and his associates' dangerousness and interference with the judicial system—though arguably not as potent as at the time of the first trial given Wilson's alleged "violence-free" prison disciplinary record since then—are still uncontroverted. Wilson has now been convicted of (not just charged with) murdering two police officers to promote his status in the Stapleton Crew. And as Wilson recognizes, the publicity on this case has remained, and is expected to remain, substantial. (See Mar. 14, 2013, Def. Ltr. at 1-3). This is particularly so given widespread recent reports of Wilson's behavior in prison, including the allegation that he impregnated a prison guard. Although the passage of time has slightly blunted the need for anonymity and partial sequestration, the court does not believe it has sufficiently reduced the need. Accordingly, the court again concludes that there is a "strong reason" to believe that the jurors need to be anonymous and semi-sequestered for their protection. See Pica, 692 F.3d at 88.

**B.      Reasonable Precautions**

For the original trial in this case, the court took care to order certain "reasonable

precautions . . . be taken to minimize any potential prejudice," namely: (1) that each potential juror be provided with "an extensive questionnaire, developed in consultation with government and defense attorneys"; (2) the prospective jurors' identifying pedigree information "be removed from the questionnaire and placed in safekeeping with the Clerk of Court"; (3) "[e]ach prospective juror . . . be questioned in person by the court, in an individually sequestered setting, after consultation with counsel, to uncover any potential bias"; and (4) "prospective jurors . . . be given a neutral explanation for the security measures," that is, that "the reason for their anonymity and partial sequestration is to maintain their personal privacy and their ability to render a fair verdict in light of the media and public attention that this trial is likely to receive . . . [and that] transportation is being provided to protect their privacy and to ensure a timely start to each day of what promises to be a long trial." Wilson, 493 F. Supp. 2d at 401.

The court is again prepared to take these reasonable precautions, which will ensure (1) the preservation of Wilson's constitutional rights; (2) Wilson's ability to conduct a searching voir dire; and (3) the fundamental fairness of the penalty phase. See Pica, 692 F.3d at 88 ("[T]he District Court took reasonable precautions to minimize any prejudice to [the defendant] and to ensure that his fundamental rights were not undermined by the decision to empanel an anonymous jury . . . includ[ing] providing the jurors with a neutral explanation of the reasons for which certain measures would be taken during the trial and ordering that prospective jurors be given a detailed questionnaire, drafted with input from defense counsel."); Quinones, 511 F.3d at 296.

Moreover, the court is sensitive to Wilson's desire that the court "explore with the *venire* the possibility that prospective jurors have been exposed to prejudicial media coverage that could [have] unfairly impact[ed] their capacity to fairly and impartially assess the evidence." (Mar. 14,

5

2013, Def. Ltr. at 1; see also id. at 3 (reiterating Wilson's "standing request for probing, in depth inquiry during voir dire into whether prejudicial media coverage has poisoned any prospective jurors['] ability to give Mr. Wilson a fair penalty phase trial"). The court has already summoned 2,000 prospective jurors who will complete an extensive questionnaire (which Wilson helped draft, and has already approved) to root out any and all bias, including any exposure to the media coverage on this case. Any juror who has any prior knowledge of this case (whether due to the media coverage or otherwise) will be thoroughly questioned at voir dire. Wilson's concern that prospective jurors will be "unlikely to credit instructions by the Court that anonymity has been ordered solely to shield them from media scrutiny" is therefore unfounded. (Id. at 3.) And as previously indicated, the court is willing to entertain a motion for a change of venue after voir dire has begun if Wilson believes one is necessary. (See Feb. 28, 2013, Mem. & Order (Dkt. 1034) at 4-5.)

Thus, the court orders that:

- each potential juror be provided an extensive questionnaire, which has already been developed in consultation with counsel for Wilson and the Government;
- all specific identifying pedigree information be removed from the questionnaire and placed in safekeeping with the Clerk of Court, which neither the parties nor their counsel will be permitted to access;
- each prospective juror (who has not been struck for cause with the parties' consent on the basis of his/her questionnaire responses alone) be questioned in person by the court in an individually sequestered setting (i.e. without any other prospective jurors present) in open court in consultation with counsel to uncover any potential bias;

6

- through the questionnaire and the individually sequestered voir dire, the parties be apprised of all relevant information concerning each potential juror, despite the fact that the name, address, and place of employment of jurors will not be disclosed; and

- prospective jurors be told that: (a) the reason for the anonymity and partial sequestration is to maintain their personal privacy and their ability to render a fair decision in light of the media and public attention that this proceeding is likely to receive; and (b) transportation is being provided to protect their privacy and to ensure a timely start to each day of what promises to be a lengthy proceeding.

\*         \*         \*

In sum, drawing on its considerable experience in conducting criminal trials (including two previous death penalty trials), the court is convinced that the use of an anonymous and semi-sequestered jury is necessary to protect the jurors and the integrity of the judicial process. The court is keenly aware that such procedures—and associated press reports—can pose a risk to a defendant's rights. In combination with the reasonable precautions set forth above, however, the court is satisfied that the use of an anonymous and semi-sequestered jury will not infringe Wilson's constitutional rights, his ability to conduct a thorough voir dire, or the fairness of the penalty phase.

## III. CONCLUSION

The Government's motion for an anonymous and semi-sequestered jury is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
March 15, 2013

    /s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge