UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Ronell Wilson's motion to strike Juror #446 and Juror #505 for cause. For the reasons set forth below, Wilson's motion as to Juror #446 is DENIED; his motion as to Juror #505 is GRANTED.

**I.    BACKGROUND**[1]

The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

**A.    Juror #446**

Wilson argues that Juror #446 is substantially impaired and therefore must be struck for cause because: (1) she cannot meaningfully consider mitigating evidence concerning Wilson's childhood; (2) she did not understand the difference between a defendant's mental state for purposes of determining guilt and for imposing punishment; and (3) the court did not pose a question concerning the pecuniary gain statutory aggravating factor. The Government opposes

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

this motion, maintaining that Juror #446 repeatedly and consistently stated that she could consider all relevant mitigation evidence, and that although she may have initially been confused about the implications of a defendant's mental condition, she ultimately understood and declared her ability to consider such evidence in making her punishment decision. As to Wilson's request that the court question Juror #446 on pecuniary gain, the Government contends that this would confuse the juror and be of little value, particularly because the court already inquires about many case-specific facts.

### B. Juror #505

Wilson moves to strike Juror #505 because at the end of voir dire, he unequivocally stated that he could not consider childhood experiences as a mitigating factor in making his punishment determination where the defendant was twenty years old at the time of the crime. The Government argues in response that Juror #505's answer reflects a belief in accountability, and does not undermine his other comments at voir dire that demonstrate a willingness to consider all forms of mitigation evidence, including childhood experiences.

## II. STANDARD OF REVIEW

### A. Life Qualification

"[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Morgan v. Illinois, 504 U.S. 719, 728 (1992) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)).

A defendant may challenge for cause "[a] juror who will automatically vote for the death penalty in every case [because that means he] will fail in good faith to consider the evidence of

aggravating and mitigating circumstances as the instructions require him to do." Id. at 729. This is often referred to as the requirement that a juror be "life-qualified." United States v. Basciano, No. 05-CR-060 (NGG), 2011 WL 4574925, at *1 (E.D.N.Y. Mar. 11, 2011).

### B. Consideration of Mitigation Evidence

To be a qualified juror in a capital case, a person must, among other things, be open to considering relevant mitigation evidence. "[T]he sentencer [may not] refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer . . . may determine the weight to be given relevant mitigating evidence[, b]ut [it] may not give it no weight by excluding such evidence from [its] consideration." Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982) (emphasis in original); see also 18 U.S.C. § 3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact *shall consider* any mitigating factor . . . ." (emphasis added)); cf. Morgan, 504 U.S. at 729 (stating that a defendant may challenge for cause a "juror who will automatically vote for the death penalty in every case [because he] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do"). Similarly, a death-eligible defendant is entitled to have the jury "consider[], as a mitigating factor, any aspect of [his] character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978) (emphasis removed).

## III. DISCUSSION

### A. Juror #446

Wilson has moved to strike Juror #446 for cause. That motion is denied.

Juror #446 repeatedly expressed her ability to consider imposing a punishment of life in prison without the possibility of release. In her questionnaire, Juror #446 affirmed that she is

"willing to consider both possible sentences in a case involving the intentional murder of two police officers." (Questionnaire Response #55.) She also indicated in her questionnaire that she did not have any "moral or philosophical beliefs in favor of the death penalty that [would make her] unable to impose life without the possibility of release regardless of the facts." (Id. #54.) At voir dire, the court asked whether, if she believed a life sentence was the appropriate punishment based on the evidence presented, she could vote for such a sentence "where the defendant has been found guilty of killing two police officers." (May 1, 2013, Hr'g Tr. at 1104:9-12.) Juror #446 replied, "Yeah, if that's what the evidence shows. If that's what the evidence shows, that life in prison is the correct way to go, yes." (Id. at 1104:13-15.) Also at voir dire, the court inquired whether she is willing to "consider both possible sentences in a case involving the intentional murder of two police officers." (May 1, 2013, Hr'g Tr. at 1108:8-13.) Juror #446 replied, "Yes." (Id. at 1108:14.)

In her questionnaire, Juror #446 did rate herself as a "7" on a 1 to 7 scale with 1 representing "strongly opposed to the death penalty" and 7 representing "strongly in favor of the death penalty." (Questionnaire Response #38.) But when asked to describe her views on capital punishment for someone who killed two police officers, Juror #446 wrote:

> *It is hard for me to say that the death penalty is always right*[;] I do believe in some cases it is necessary. There is no reason those who kill and are found guilty by the letter of the law should be walking around free or should be taken care of for the rest of their life. I don't know this case or the law so *I can't say if he should in fact be given the death penalty.*

(Id. #39 (emphases added).) In addition to highlighting the clear shortcomings of Question #38, this thoughtful answer demonstrates that Juror #446 is capable of meaningfully considering both possible sentences in this case and the evidence presented. Although her statement concerning whether convicted murderers "should be walking around free or should be taken care of for the

4

rest of their life" could plausibly be read to reflect improper support for the death penalty, the court believes the best indication of Juror #446's views on the death penalty is an unprompted statement given at voir dire: "I'm not, you know, everyone should be killed if they kill someone. I'm not one of those people that says everyone should get the death penalty." (May 1, 2013, Hr'g Tr. at 119:7-10.)

Similarly, Juror #446 consistently expressed an ability to consider all mitigating factors in making her punishment determination. At voir dire, the court explained the likely types of mitigating and aggravating evidence (id. at 1103:9-23), and asked Juror #446, "if [she were] presented with mitigating factors by the defense, would [she] consider those factors," to which she replied, "I would consider all the factors, yes," (id. at 1104:4-8). The court also explained to Juror #446 that, in addition to the circumstances of the crime, she might be presented with information concerning Wilson's background, including "his youth, his growing up, his family circumstances," and asked Juror #446, "Will you consider that information before reaching your judgment as to what the sentence should be?" (Id. at 1105:6-21.) Juror #446 answered, "I'll consider everything, yeah. I'll consider I mean, he's an adult, correct? You know, we're all adults, we all have pasts, you know. I can't make a decision, I'd have to hear everything, yeah, *I'd have to hear everything about his life, I guess, to see what brought him there*, I guess." (Id. at 1105:22-1106:2 (emphasis added); cf. Questionnaire Response #43 (when asked whether the prior death sentence would influence her punishment decision, stating, "None—I would have to hear the evidence for myself"); id. #46 (when asked whether she would be unable to consider a life sentence if it were established that Wilson is a future danger, stating, "[A]gain, I would need to hear evidence to decide if this person needed to be in prison for life or not"); May 1, 2013, Hr'g Tr. at 1113:5-10 (confirming, in response to a follow-up question regarding questionnaire

5

response #46(b), that she would "consider to the extent that [she] thought they are relevant, childhood experiences in [her] consideration of the penalty").)

Despite these views, Wilson argues that Juror #446 must be struck because she "acceded" to the court's instructions concerning her ability to meaningfully consider background mitigation evidence, as reflected by the fact that she mentioned that "we all have pasts." (May 1, 2013, Hr'g Tr. at 1105:24.) To the contrary, the court finds Juror #446 to be an intelligent, confident juror who repeatedly and firmly stated that she was willing to consider all possible mitigation evidence—both before and after the court fully engaged her on the subject. (See, e.g., Questionnaire Responses #43, #46; May 1, 2013, Hr'g Tr. at 1104:4-8, 1105:6-21, 1105:22-1106:2.) An off-hand comment stating that "we all have pasts" demonstrates, at most, that Juror #446 might not place much weight on this particular mitigation factor—not that she would preclude it from her consideration. See Eddings, 455 U.S. at 113-14.

Wilson also argues that Juror #446 did not understand the difference between a defendant's mental condition for determining guilt and for deciding punishment. In her questionnaire, Juror #446 indicated that she would consider childhood experiences in making her penalty decision, adding "I guess childhood experiences could have bearing on a person[']s mental state." (Questionnaire Response #46(b).) After initially confirming this to be her view, the court, at defense counsel's request, began to ask Juror #446 to explain what she meant by "mental state." (See May 1, 2013, Hr'g Tr. at 1114:12-16.) The court and Juror #446 then engaged in a lengthy colloquy from which it was clear that she (along with countless lawyers) did not fully understand the difference between the use of mental condition evidence at the guilt and penalty phases. (See id. at 1114:17-1115:25; see also id. at 1115:25 ("I'm maybe confused.").) To alleviate this confusion, the court explained how judges typically sentence

6

non-capital defendants, and asked whether Juror #446 would "consider all of these different factors and not rule out consideration of a particular factor out of hand," to which she responded, "Okay, yes. I'll take everything that's told to me in consideration." (Id. at 1117:16-23; see also id. at 1116:15-19 ("THE COURT: So, if it's allowed to be presented, will you consider it— THE PROSPECTIVE JUROR: Yes. THE COURT: —is the question. THE PROSPECTIVE JUROR: Yes, that's what I said.").) Based upon her questionnaire responses and answers given at voir dire, the court believes that this passage reflects a qualified juror who was momentarily confused about a thorny legal issue but who, in the end, is able to meaningfully consider all mitigation evidence.

Finally, Wilson argues that the court erred in not asking Juror #446 a specific question regarding the pecuniary gain aggravating factor because she had expressed an interest in why Wilson committed the murders. The court has already indulged the defense in asking many case-specific questions, which, as the Second Circuit has already indicated in this case, is not constitutionally required. See Whitten, 610 F.3d at 186 ("Wilson argues that there is a great disparity between the case-specific questioning allowed the prosecution and what Wilson was allowed. However, Morgan demands adequacy, not parity. It requires only that defendants be afforded an opportunity to identify constitutionally biased jurors."). To ask prospective jurors about an even more specific case fact—one that, unlike those mentioned in the questionnaire, the parties did not agree should be presented—would force jurors to commit to positions without having heard any actual evidence. Moreover, fully describing the "pecuniary gain" aggravating factor would require a tremendous amount of background information that would likely only confuse and, depending on the level of specificity, inflame prospective jurors' passions. This is particularly so if the court—whose statements likely carry more weight with jurors than do the

7

parties' arguments—presented this evidence as isolated information rather than in the context of the case in its entirety. Moreover, Juror #446 did not give any answer that required a pecuniary gain question to be posed. She simply expressed her curiosity about why Wilson killed Detectives Nemorin and Andrews, which is entirely reasonable, commonplace, and not indicative of any bias or disqualification that would require further investigation.

*     *     *

The totality of Juror #446's responses given both in her questionnaire and at voir dire give the court the firm impression that she: (1) can meaningfully consider all forms of mitigation evidence; (2) could impose a life sentence; and (3) understands the role of mental condition evidence at sentencing. Wilson's motion is therefore denied.[2]

**B.     Juror #505**

Wilson moves to strike Juror #505 for cause. That motion is granted.

Throughout voir dire, Juror #505 presented himself as an eminently qualified juror open to considering all forms of mitigation evidence and both possible penalties in this case. For instance, when the court asked whether Juror #505 would consider "evidence of mitigating evidence of—regarding the defendant's upbringing and family background and personal characteristics," Juror #505 replied, "Yes, I could consider it." (May 1, 2013, Hr'g Tr. at 1215:18-25.) When the court asked whether there is anything that Juror #505 "would like to know about this defendant's background that might be helpful to [him] in deciding whether to impose the harshest penalty available," Juror #505 stated, in part, "Well, you have touched on his upbringing, it is going to be a factor, you know, because—I guess the argument is nature versus

---

[2]     Juror #446's qualification is contingent on a final determination as to hardship because she was unsure whether her employer will pay her salary during jury service. (See May 1, 2013, Hr'g Tr. at 1100:23-1101:2.) If it does not, the court will so inform the parties and address whether Juror #446 should be struck since she did not indicate whether foregoing her salary would pose a financial hardship. (See id.)

nurture." (Id. at 1219:11-17; cf. id. at 1219:6-10 ("THE COURT: . . . [I]s [there] anything that you would not consider if it is put before you as a juror[?] PROSPECTIVE JUROR: I can't think of anything at this time, no.").)

But toward the end of voir dire, the court asked—at the Government's request—a specific question concerning Juror #505's response to question #46(b) of the questionnaire, which indicated that he could consider childhood experiences when determining the proper punishment "[d]epending on the age of the defendant at the time (adult/minor)." (See May 1, 2013, Hr'g Tr. at 1226:15-24, 1227:19-25.) The court asked what Juror #505 meant by the phrase "at the time." (Id. at 1228:1-2.) The following discussion then occurred:

> THE PROSPECTIVE JUROR: At the time of the crime.
>
> THE COURT: Okay. Now, if the person was 20 at the time of crime, is the person an adult or a minor?
>
> THE PROSPECTIVE JUROR: An adult.
>
> THE COURT: An adult. *Would that preclude consideration about childhood experiences in determining what the sentence should be?*
>
> THE PROSPECTIVE JUROR: *Yes*.
>
> THE COURT: Why?
>
> THE PROSPECTIVE JUROR: There comes a point where as an adult you have to take responsibility, no matter what has happened to you. So, as an adult, making your own decisions, you have to either put whatever pains you in the past away or just continue on the road. But there's a decision there as an adult. At 20 years old you can be on your own, you can do who you need to do. So, an adult can make a decision to let go of whatever.

(Id. at 1228:3-19 (emphases added).) The court then asked whether the parties had any further questions for this juror; both sides replied in the negative. (Id. at 1228:20-22.)

Despite this exchange, the Government argues that Juror #505 is still qualified because he is simply concerned about accountability and otherwise stated that he could consider mitigating

9

evidence, including childhood experience. But this ignores the fact that when explicitly asked whether Wilson's age at the time of the crime would "preclude consideration about childhood experiences in determining what the sentence should be," Juror #505 confidently and flatly stated, "Yes." Although the remainder of Juror #505's questionnaire responses and answers given at voir dire paint a picture of a perfectly acceptable juror, this interaction, conducted at the Government's request and resulting in no request for follow-up by either party, leaves the court with no confidence that Juror #505 could meaningfully consider and properly weigh the mitigating factors presented in *this case*. Accordingly, Juror #505 is substantially impaired and Wilson's motion is granted.

## IV.   CONCLUSION

Wilson's motion to strike Juror #446 is DENIED and his motion to strike Juror #505 is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
       May 2, 2013

   /s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge