UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is Defendant Ronell Wilson's motion to strike Juror #592 for cause. For the reasons set forth below, Wilson's motion is DENIED.

**I.    BACKGROUND**[1]

      The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

      Wilson moves to strike Juror #592 on the ground that he is substantially impaired because he cannot meaningfully consider mitigation evidence and is unable to properly consider a life sentence. Specifically, Wilson argues that the issue of his "mental state" at the time of the crime "dominated" this juror's thinking, as reflected by Juror #592's statement that if Wilson knew his victims were police officers, he (Juror #592) would be "very prone" to imposing the death penalty unless there were "extenuating circumstances." The Government opposes, contending that the totality of Juror #592's responses indicate that he can properly weigh mitigating factors,

---

[1]     The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

and that his indication that he might "lean" toward the death penalty in a particular circumstance is not disqualifying.

## II. STANDARD OF REVIEW

### A. Life Qualification

"[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Morgan v. Illinois, 504 U.S. 719, 728 (1992) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)).

A defendant may challenge for cause "[a] juror who will automatically vote for the death penalty in every case [because that means he] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." Id. at 729. This is often referred to as the requirement that a juror be "life-qualified." United States v. Basciano, No. 05-CR-060 (NGG), 2011 WL 4574925, at *1 (E.D.N.Y. Mar. 11, 2011).

### B. Consideration of Mitigation Evidence

To be a qualified juror in a capital case, a person must, among other things, be open to considering relevant mitigation evidence. "[T]he sentencer [may not] refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer . . . may determine the weight to be given relevant mitigating evidence[, b]ut [it] may not give it no weight by excluding such evidence from [its] consideration." Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982) (emphasis in original); see also 18 U.S.C. § 3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact *shall consider* any mitigating factor . . . ." (emphasis added)); cf. Morgan, 504 U.S. at 729 (stating that a defendant may challenge for

2

cause a "juror who will automatically vote for the death penalty in every case [because he] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do"). Similarly, a death-eligible defendant is entitled to have the jury "consider[], as a mitigating factor, any aspect of [his] character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978) (emphasis removed).

## III. DISCUSSION

Wilson has moved to strike Juror #592 for cause. That motion is denied.

To begin, Juror #592's questionnaire depicts a juror able to meaningfully consider mitigation evidence and to impose a sentence of life in prison without the possibility of release. For instance, when asked to "describe in detail [his] views and beliefs about the penalty of life in prison without the possibility of release as opposed to the death penalty for someone who killed two police officers," Juror #592 wrote, "Both are harsh punishments for violent behavior justifiable in extreme cases." (Questionnaire Response #41.) When asked to detail "[w]hat role, if any . . . childhood experiences play in a person's behavior and choices as an adult," Juror #592 stated, "Quite a bit," and affirmed that "such information [should] be considered when making a decision about the death penalty versus life without the possibility of release." (Id. #46(a), (b).) Moreover, Juror #592 indicated in his questionnaire that he is "willing to consider both possible sentences in a case involving the intentional murder of two police officers." (Id. #55; see also id. #54 (denying that he has any "moral or philosophical believes in favor of the death penalty that [would make him] unable to impose life without the possibility of release regardless of the facts").)

At voir dire, Juror #592 repeatedly stated that he was open to considering all forms of

3

mitigation evidence. When asked whether he could consider factors such as Wilson's "history, how he was treated as a child, his education and other background" in making the punishment decision, Juror #592 stated, "Yes, if so instructed." (May 6, 2013, Hr'g Tr. at 1334:13-20.) He affirmed that if the "mitigating factors are such that a sentence of life in prison without the possibility of release is the appropriate sentence," he "could vote for that sentence." (Id. at 1334:21-1335:1.) Moreover, when asked about his questionnaire response indicating that he would consider evidence of a defendant's troubled upbrining, Juror #592 again confirmed that he "would be open to considering childhood experiences in connection with arriving at an appropriate sentence." (Id. at 1339:19-1340:2.)

Juror #592 did express some reservation as to whether he could impose a life sentence *if* it were proven that Wilson knew his victims were police officers at the time of the murders. For example, when the court asked whether he "believe[s] that anyone who is convicted of intentional murder of a police officer should automatically get the death penalty, or always get the death penalty," he replied, "I think if they did it knowing that it was a police officer and had that knowledge that they should be aware that they would be facing that kind of punishment, very possibly that." (Id. at 1335:25-1336:7.) The court followed-up on this response, asking "if you were convinced that the defendant was aware that the murders were of two police officers, [would] you not consider the mitigating evidence that's presented to you before reaching a decision as to what the penalty should be?" (Id. at 1336:8-12.) Juror #592 replied, "No. If there is some mitigating evidence that would cause him to feel that he or his loved ones were in danger, without death. You know, if there was some kind of pressure putting him in this situation." (Id. at 1336:13-16.)

The court then disabused Juror #592 of the possibility that Wilson was acting in self-

4

defense or under any duress, and again asked whether Juror #592 could "consider mitigating evidence having to do with various aspects of the defendant's life before the murders took place when he was a child, growing up and so forth." (Id. at 1337:2-6.) Juror #592 stated that he "would consider it," but then interjected and stated, "If I were convinced that there was some reason that he, you know, did not understand or did not—." (Id. at 1337:10-12.) The court then instructed Juror #592 that there is no issue concerning Wilson's "understanding" at the time of the crime, and again asked whether he could weigh considerations such as Wilson's difficult upbringing in deciding "whether to impose [the] death penalty or a life sentence." (Id. at 1337:13-1338:9.) Juror #592 replied, "I think I could." (Id. at 1338:10.)

Given this confusion, the court asked Juror #592, at defense counsel's request, whether if he learned that "the defendant knew that [the victims] were police officers, would [he] always impose the death penalty?" (Id at 1345:1-4.) Juror #592's response best captured his true beliefs on the topic: "I would be very prone to [imposing the death penalty if Wilson knew his victims were police officers] unless there were really extenuating circumstances." (Id. at 1345:5-6.)

Wilson argues that this statement indicates that Juror #592 is substantially impaired. He is mistaken. Juror #592 simply believes that Wilson's background deserves less—but not zero—weight as compared to his knowledge of his victim's identities. That a particular fact carries significant weight for this juror is not disqualifying under Morgan or the Federal Death Penalty Act.

Courts have qualified jurors in similar circumstances. For instance, in United States v. Fulks, 454 F.3d 410 (4th Cir. 2006), the Fourth Circuit upheld a trial court's denial of a defendant's motion to strike a juror who stated that although "circumstances presented about the defendant's life and background, unrelated to the offense," were "relevant" to his punishment

5

decision, he would vote for the death penalty "90 percent of the time [in the case of intentional murder], I mean unless its [sic] something outrageous." Id. at 428. The court reasoned that "Morgan only requires the exclusion of jurors who would categorically reject any mitigating evidence offered by the defendant," for "although a juror must be willing and able to consider mitigating evidence, he is entitled to '*determine the weight to be given*' to any such evidence." Id. (quoting Eddings, 455 U.S. at 115) (emphasis added)). Similarly, this court in Basciano denied the defendant's motion to dismiss for cause a juror who indicated that she "would be inclined to vote for the death penalty" if the Government proved an aggravating factor, but later indicated that "even under circumstances in which there are sufficient aggravating factors to justify the death penalty, she w[ould] consider mitigating factors and be open to imposing a sentence of life in prison." 2011 WL 4574925, at *4-5.

The court is aware that Juror #592 at times focused on the issue of Wilson's state of mind at the time of the murders. (May 6, 2013, Hr'g Tr. at 1335:25-1336:16, 1337:2-6, 1337:10-1338:10.) However, this juror also repeatedly and credibly indicated that he was open to considering all forms of mitigation evidence. (Questionnaire Response #41, #46(a), (b); May 6, 2013, Hr'g Tr. at 1334:13-20, 1334:21-1335:1, 1339:19-1340:2; cf. Questionnaire Response #54, #55.) These sincere answers, which were given after lengthy thought (not improper delay, as Wilson suggests), demonstrate that background mitigation evidence would *likely* not outweigh whether Wilson knew that his victims were police officers (see May 6, 2013, Hr'g Tr. at 1345:5-6 ("I would be *very prone* to [imposing the death penalty if Wilson knew his victims were law enforcement] *unless there were really extenuating circumstances*." (emphases added)), and as with the prospective jurors in Fulks and Basciano, this is not disqualifying, see Fulks, 454

6

F.3d at 428[2]; Basciano, 2011 WL 4574925, at *4-5.  The court is convinced that Juror #592 would not *exclude* such evidence form his consideration or automatically impose the death penalty in any given circumstance.  Thus, given Juror #592's questionnaire and his responses at voir dire (including the demeanor with which he gave them), the court is left with the firm impression that this prospective juror could meaningfully consider all forms of mitigation evidence and impose a life sentence.

## IV. CONCLUSION

Wilson's motion to strike Juror #592 for cause is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      May 8, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[2] Indeed, the challenged juror in Fulks expressed a *general* belief that he would impose the death penalty 90% of the time for *any* intentional murderer.  454 F.3d at 428.  Juror #592, by contrast, would only be "very prone" to imposing the death penalty "unless there were really extenuating circumstances" *if* it were proven that Wilson knew that his victims were police officers. (May 6, 2013, at 1345:5-6.)  This added contingency gives the court further solace that Juror #592 could meaningfully consider mitigation evidence and impose a life sentence.