UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                        Defendant.

------------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Ronell Wilson's motion to strike Juror #1081. For the reasons set forth below, Wilson's motion is DENIED.

## I.    BACKGROUND[1]

The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

Wilson moves to strike Juror #1081 on the ground her initial answers given at voir dire establish that she is substantially impaired because (1) she cannot meaningfully consider childhood experiences as mitigation evidence; and (2) would automatically impose the death penalty unless Wilson himself expressed remorse for his crimes. The Government argues that Juror #1081 stated that she can consider childhood experiences, and any answers to the contrary are best understood to reflect a belief in accountability. It also maintains that Juror #1081 stated that she could follow the court's instructions not to draw any negative inference should Wilson

---

[1]     The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

exercise his right not to testify.

## II. CONSIDERATION OF MITIGATION EVIDENCE

To be a qualified juror in a capital case, a person must, among other things, be open to considering relevant mitigation evidence. "[T]he sentencer [may not] refuse to consider, *as a matter of law*, any relevant mitigating evidence. . . . The sentencer . . . may determine the weight to be given relevant mitigating evidence[, b]ut [it] may not give it no weight by excluding such evidence from [its] consideration." Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982) (emphasis in original); see also 18 U.S.C. § 3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact *shall consider* any mitigating factor . . . ." (emphasis added)); cf. Morgan v. Illinois, 504 U.S. 719, 729 (1992) (stating that a defendant may challenge for cause a "juror who will automatically vote for the death penalty in every case [because he] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do"). Similarly, a death-eligible defendant is entitled to have the jury "consider[], as a mitigating factor, any aspect of [his] character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978) (emphasis removed).

## III. DISCUSSION

Wilson moves to strike Juror #1081 for cause. That motion is denied.

Wilson argues that Juror #1081 is substantially impaired for two reasons: (1) she could not meaningfully consider evidence of Wilson's childhood experiences; and (2) she would require Wilson personally express remorse to meaningfully consider a life sentence. Neither is persuasive.

As to childhood experiences, Juror #1081 repeatedly expressed her ability to consider

such mitigation evidence. For instance, Juror #1081 stated in her questionnaire that childhood experiences play a "huge role" in a person's behavior and choices as an adult, but indicated that such evidence does not excuse a person's conduct because "as individuals we must be held respons[i]ble for our actions." (Questionnaire Response #41(a).) She also affirmed her ability to consider such experiences in making her penalty decision, and again detailed her belief that crimes cannot be excused because of a troubled upbringing by writing, "No matter how bad your childhood was this doesn't give you the right to go around killing others." (Id. 46(b).)

At the beginning of voir dire, Juror #1081 affirmed her ability to "meaningfully consider" evidence about Wilson's "background, his upbringing, his family circumstances, and his person[al] characteristics" in "deliberating on what the sentence should be." (May 14, 2013, Hr'g Tr. at 2151:11-18.) When asked to describe what information about Wilson's background she "would want to be able to consider," Juror #1081 mentioned abuse (physical or verbal) and the "environment that [he] gr[ew] up in." (Id. at 2151:19-2152:6.)

Wilson maintains that Juror #1081 is impaired because when asked about her questionnaire responses on childhood experiences, she initially indicated that she would not be able to consider such evidence, stating "I grew up in a bad environment but I didn't turn around killing anyone." (Id. at 2157:15-21.) When asked again if she "wouldn't consider childhood experience," Juror #1081 stated, "It kind of makes you who you are but you can change if you want to change." (Id. at 2157:22-25.) However, after the court clarified that the role of a sentencing jury is to weigh all the evidence, it asked whether Juror #1081 would be "able to put [her] life experience aside in a sense and look freshly at the life experience of this defendant who [was] 20 years old when he committed the murders and had experiences growing up that might inform [her] as to . . . what kind of sentence he should receive." (Id. at 2161:1-2162:3.) She

replied in the affirmative. (Id. at 2162:4.) Additionally, in an abundance of caution, the court asked Juror #1081, "Do you think it would be difficult for you to [consider childhood experiences] because of your own personal growing up experiences?" (Id. at 2163:1-3.) She replied, "No." (Id. at 2163:4.)

Thus, based on her questionnaire responses, her answers at voir dire, and her thoughtful, credible demeanor, the court is convinced that Juror #1081 could meaningfully consider Wilson's life experiences as mitigation evidence. Although Wilson stresses that her initial responses at voir dire evince an impairment, Juror #1081's questionnaire and answers given at the very beginning of voir dire concerning mitigation evidence—and especially those given after the court explained how evidence is typically considered at the penalty phase—demonstrate that she could consider such evidence. (See Questionnaire Response #46; May 14, 2013, Hr'g Tr. at 2151:11-18, 2151:19-2152:6; see also Questionnaire Response #44 (denying that she is unable to impose a life sentence if Wilson is proven to be a future danger).) Juror #1081's views are best understood to represent her belief that a tough childhood does not *excuse* Wilson's actions, not that they should be given zero consideration in the penalty determination. This is entirely reasonable, consistent with the Federal Death Penalty Act, and common amongst prospective jurors (see, e.g. Apr. 26, 2013, Mem. & Order (Dkt. 1142) at 4 n.2 (discussing this issue with regard to Juror #184)). Accordingly, Wilson's challenge on this ground is overruled.

Wilson also moves to disqualify Juror #1081 on the ground that she is unable to properly consider a life sentence because she would only impose the death penalty if Wilson himself did not express remorse for the crimes. His argument stems from Juror #1081's response indicating that she could not consider a life sentence in this case, after which she explained, "Circumstances, you kill two innocent people without—I guess at that point it has to do with

4

your remorse, are you remorseful for what you did." (May 14, 2013, Hr'g Tr. at 2152:18-2153:3.) However, the court immediately sought to clarify this response and informed Juror #1081 that Wilson is under no obligation to testify (and that she may not hold this fact against him). (Id. at 2153:4-9.) The court then asked, "If [Wilson] doesn't testify would you automatically vote for the death penalty," to which Juror #1081 replied, "No, I will have to listen to everything that's being said in the court." (Id. at 2153:9-13; see also id. at 2153:14-19 ("THE COURT: All right. So going back to the mitigating evidence, if you felt that that evidence demonstrated to you that based on your own moral values that the right sentence was life in prison, could you vote for life in prison? PROSPECTIVE JUROR NO. 1081: Yes.").) These unequivocal and assertive responses give the court full confidence that Juror #1081 does not believe that Wilson must express remorse in order for her to meaningfully consider a life sentence.

     Nor is the court concerned that Juror #1081 would need to hear from Wilson himself at the penalty phase. Juror #1081 did state at one point during oral voir dire, "I mean if a person is not—you're not really listening to their side and you're just listening to their attorney's side, you are not really hearing their point, so it's hard to say what you want to hear from that person." (Id. at 2155:18-22.) But when the court immediately thereafter asked "if [a defendant] doesn't take the witness stand . . . would you have difficulty imposing a life sentence in any case," Juror #1081 replied, "No, because you have to listen to both sides. So it depends on what you're listening to during the trial." (Id. at 2155:23-2156:3.) And finally, the court explained that Wilson himself will likely not testify and asked Juror #1081, "[d]oes it matter to you whether you hear about remorse from the defendant or from the defendant's lawyers? Does it make a difference who says it?" (Id. at 2156:4-13.) Juror #1081 replied flatly, "No." This gives the

5

court confidence that Wilson need not express remorse (whether personally or through his lawyers) in order for Juror #1081 to meaningfully consider a life sentence.

Ultimately, the court does not believe that Juror #1081 is impaired in any way. Although she believes that childhood experiences are not an excuse for one's bad deeds, Juror #1081 will meaningfully consider such evidence in making her punishment decision. And Juror #1081's belief that Wilson's remorse (or lack thereof) may be relevant is appropriate (see Notice of Intent to Seek the Death Penalty (Dkt. 174)), but not dispositive of her penalty decision. Wilson's motion is therefore denied.

## IV. CONCLUSION

Wilson's motion to strike Juror #1081 is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      May 15, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge