UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

     Before the court is the Government's motion to strike Juror #1328 for cause. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND[1]

     The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

     The Government argues that Juror #1328 is unqualified because she cannot meaningfully consider imposing a death sentence in this case. Wilson maintains that despite Juror #1328's general opposition to the death penalty—which is not inherently disqualifying—she indicated that there is a non-zero chance that she could impose the ultimate sentence here.

## II. DEATH QUALIFICATION

     "[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Morgan v. Illinois, 504 U.S. 719, 728 (1992) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). "[I]t does not make sense to require simply that a juror not 'automatically' vote against the death penalty; whether or not a venireman *might* vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge." Witt, 469 U.S. at 422-24 (emphases in original); see also Uttecht v. Brown, 551 U.S. 1, 18 (2007) ("[A juror's] assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case . . . .").

## III.   DISCUSSION

The Government moves to strike Juror #1328 for cause. That motion is granted.

In her questionnaire, Juror #1328 repeatedly expressed her general, though not absolute, opposition to the death penalty. (See, e.g., Questionnaire Response #28 ("I have a moral opposition to the imposition of the death penalty."); id. #39 ("Despite the appalling, horrendous and indefensible nature of the crime, I have never believed in the death penalty."); id. #53 ("I am generally, though not unequivocally and absolutely, opposed to the death penalty morally."); see also id. at #47 (stating that "almost all" intentional murderers should be sentenced to life in prison "with the exception of the murder of children").)

At voir dire, the court asked Juror #1328 to explain her opposition to the death penalty. Juror #1328 stated, "Morally I do not believe that executing someone or sentencing them to death is a viable form of retribution for that person committing the act of murder." (Id. at 2750:3-8.) Recognizing that Juror #1328's views might not be absolute, the court asked whether

there are exceptions to her general opposition to the death penalty.  (See id. at 2750:13.)  Juror #1328 explained that some exceptions do exist, such as cases involving the murder of a child, but could not identify any other instances in which she could vote to impose the death penalty.  (Id. at 2750:14-19.)

The court attempted to gain further insight into Juror #1328's views on capital punishment by asking whether there is "any kind of intentional murder for which the death penalty would be appropriate," to which Juror #1328 replied, "I think I would be more inclined to consider the death penalty if it were the murder of a child."  (May 21, 2013, Hr'g Tr. at 2746:12-17.)  The court then followed-up on this response and asked whether "killing two adults would not be a category for which [she] think[s] the death penalty would be appropriate."  (Id. at 2746:18-20.)  Juror #1328 stated, "I think I'd be less inclined, much less inclined."  (Id. at 2746:21-22.)  When the court asked whether it is "still possible that [she] could impose the death penalty for the execution of two people by shooting them in the back of the head without notice," Juror #1328 answered, "There is a very small possibility, yes."  (Id. at 276:23-2747:3.)

The court also explained the various mitigating and aggravating factors that will likely be presented, and asked, "[i]f [she] receive[d] evidence [that Wilson is a] future danger and other evidence that demonstrates aggravating factors and [she] came to a conclusion that the aggravating evidence was substantially greater than the mitigating evidence and justified a sentence of death, could [she] vote for the death sentence."  (Id. at 2749:21-25.)  Juror #1328 replied, "It's very unlikely, but yes, there is a small possibility."  (Id. at 2750:1-2.)

Were the court to only examine the written record surrounding Juror #1328, it might be inclined to deny the Government's motion to strike because she expressed a "very small" possibility of imposing the death penalty in this case.  See Morgan, 504 U.S. at 728.  But having

3

observed Juror #1328 in person, the court is left with the firm impression that despite this response, this juror could not realistically consider imposing a death sentence here. Juror #1328's answers were given timidly, without confidence, and after much hesitation. Here reluctant statements that there was a "small possibility" that she could consider imposing the death penalty in this case do not overcome her repeated indications of her general hostility to capital punishment. Although Juror #1328 did not appear to be dishonest, this prospective juror's demeanor failed to give the court any confidence that she could ever vote for the death penalty in this case. See Uttecht, 551 U.S. at 18; see also Witt, 469 U.S. at 422-24.

To the contrary, the court believes that Juror #1328 could only vote for the death penalty if the defendant had murdered a child. (See, e.g., Questionnaire Response #47; May 21, 2013, Hr'g Tr. at 2746:12-17.) This conclusion is bolstered by the unfortunate fact that Juror #1328 was sexually abused as a child, which she readily acknowledged is "related" to her ability to impose the death penalty in such a circumstance. (See May 21, 2013, Hr'g Tr. at 2752:21-2753:15.) As the Supreme Court has recognized, however, "whether or not a venireman *might* vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge." Witt, 469 U.S. at 422-24 (emphases in original). Accordingly, the Government's motion is granted.

## IV. CONCLUSION

The Government's motion to strike Juror #1328 is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
      May 22, 2013

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

4