UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

Defendant.

-----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Ronell Wilson's motion to strike Juror #1443 for cause. For the reasons set forth below, the motion is DENIED.

**I.  BACKGROUND**[1]

The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

Wilson moves to strike Juror #1443 on the ground that her answers provided at voir dire "flatly contradict" those given in her questionnaire. According to Wilson, it is unclear what this juror's true views are, frustrating his ability to meaningfully exercise his peremptory challenges. The Government opposes this motion, arguing Juror #1443's questionnaire answers did not conflict with those provided at voir dire, and stressing that she gave qualifying answers.

**II.  INCONSISTENT ANSWERS**

A prospective juror may be dismissed for cause where her "inconsistent positions" make

---

[1]  The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

it "unlikely that she w[ill] follow[] the court's instructions if empaneled." United States v. Fell, 531 F.3d 197, 216 (2d Cir. 2008). This is because "'there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. This is why deference must be paid to the trial judge who sees and hears the juror.'" Id. at 211 (quoting Witt, 469 U.S. at 424-26). A juror's inconsistent positions also frustrate the parties' ability to meaningfully exercise peremptory challenges since "a juror's voir dire responses that are ambiguous or reveal considerable confusion may demonstrate substantial impairment." Id. at 215; see also Uttecht v. Brown, 551 U.S. 1, 18 (2007) ("[A juror's] assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case . . . .").

## III. DISCUSSION

Wilson moves to strike Juror #1443 for cause. That motion is denied.

Wilson identifies three of Juror #1443's questionnaire responses that purportedly contradict her answers provided at voir dire. First, when asked whether she would be "unable to consider a sentence of life in prison without the possibility of release if the evidence at trial showed a defendant presented a future danger to others," Juror #1443 checked the "Yes" box and wrote, "It is difficult to understand the benefits to the convicted to stay in jail forever. There is still violence occurring in jails." (Questionnaire Response #44.) Second, when asked whether anything about her religious beliefs would make it difficult to impose the death penalty, Juror #1443 checked "Yes," explaining "Generally our 'creator' only can 'take life' but we still have laws to be obeye[d] in a society, to keep order." (Questionnaire Response #52.) Third, when asked if there was "any other matter that [she] should call to the Court's attention that may have

2

any bearings on [her] qualifications as a juror or that may affect [her] ability to render an impartial verdict based solely on the evidence and the Court's instructions on the law," Juror #1443 marked "Yes," explaining, "what good does it do to the convicted to keep [him] in jail for life[.] Were all facts presented in the trial, were issues of the mistrial addressed or cleared up to the satisfaction of both parties?" (Questionnaire Response #76.)

At voir dire, the court inquired about each of these questionnaire responses. As to her response to question #44 of the questionnaire concerning future danger, Juror #1443 confirmed that she adheres to her questionnaire response. (May 23, 2013, Hr'g Tr. at 2597:25-2598:7.) The court then asked, "And if the defense presented evidence that the prison system can and does have means to protect other prisoners and prison employees from violent prisoners, could [she] consider that evidence as well," to which Juror #1443 replied, "Yes." (Id. at 2598:8-12.) Additionally, when asked by the court whether she could vote for a life sentence if she were "satisfied that the prison system could provide the kind of protection of that nature" "despite the defendant's being a danger based on his life experience," Juror #1433 answered, "Yes." (Id. at 2598:13-17.)

Regarding Questionnaire Response #52, the court asked whether Juror #1443's "religious beliefs make it difficult for [her] to impose the death penalty with that religious admonition in mind." (Id. at 2597:14-23.) She replied, "No." (Id. at 2597:24.) Similarly, because Juror #1443 self-identified as an Episcopalian (Questionnaire Response #51), the court asked Juror #1443 whether that church has any views on the death penalty (see May 23, 2013, Hr'g Tr. at 2950:12-15). She stated, "[n]ot as far as I know." (May 23, 2013, Hr'g Tr. at 2950:15.)

Finally, as to Juror #1443's desire to notify the court of a potential issue regarding her ability to be a fair and impartial juror, the court explained that the issues concerning the reversal

3

of the previous death sentence "have been resolved" and "had nothing to do with the evidence presented." (Id. at 2956:7-24.) Reminding the juror that "the defendant who was convicted of two intentional murders takes the position that a life sentence" is the appropriate punishment, the court asked Juror #1443 whether she is "able to be fair and impartial and consider all the mitigating evidence in order to make a fair, impartial decision on [what] the sentence should be[,] life or death." (Id. at 2957:1-9.) She answered, "Yes." (Id. at 2597:10.)

None of these exchanges reflects any significant conflict between Juror #1443's questionnaire and voir dire responses. Juror #1443's responses to questions #44 and #76 on the questionnaire indicated that she could not understand why an individual would prefer to be sentenced to life in in prison without the possibility of release rather than to death.[2] (See Questionnaire Response #44 ("It is difficult to understand the benefits to the convicted to stay in jail forever."); id. #76 ("What good does it do to the convicted to keep [him] in jail for life.").) However, the court informed Juror #1443 that Wilson is seeking a life sentence and explained that "irrespective of whether [Juror #1443] believe[s a life sentence is] good or not for the inmate, the defendant is seeking a life sentence and the issue is whether the appropriate penalty is a life sentence or a death sentence." (May 23, 2013, Hr'g Tr. at 2949:8-12.) The court then asked whether Juror #1443 "[c]an make [her] decision based solely on the evidence as it is presented here in court and not based on some other issues like performing tasks and duties in

---

[2] To the extent any of Juror #1443's responses could be read to imply a belief that society should not pay to keep a convicted murderer alive (see Questionnaire Response #39, #40, #41, #45), Juror #1443, like most other prospective jurors who have expressed such a view, clearly and unambiguously stated her ability to set aside such concerns (see May 23, 2013, Hr'g Tr. at 2952:13-20 ("THE COURT: Do you understand that the question of how much it costs to execute someone or keep them in prison is not an issue for this case; that I will instruct the jury to pay no attention to what the relative costs are, there will be no evidence about it and you will be asked to disregard that, and that you need to make a personal moral decision based upon the evidence that's presented and nothing else? THE PROSPECTIVE JUROR: Yes."); see also id. at 2949:23-11 ("THE COURT: . . . The issue is what penalty is sufficient to meet the requirements of justice in a case of this individual killing two other people and I think the issue about what kind of duties you would have in prison will not be the subject of this. THE PROSPECTIVE JUROR: Sure. THE COURT: And so, can you put that out of your mind— THE PROSPECTIVE JUROR: Yes, yes, yes. THE COURT: —for purposes of deciding whether this person lives or dies? THE PROSPECTIVE JUROR: Yes. THE COURT: You can. THE PROSPECTIVE JUROR: I can")).

prison," to which Juror #1443 replied, "Yes, I'm open to, you know, the events and what, if there's a benefit—yeah, if life in prison, you know, hearing other circumstances they present, if that's you know, agreeable, I'm open to it." (Id. at 2949:13-19.) This reflects Juror #1443's ability to put aside her own curiosity as to why anyone would prefer a life sentence over the death penalty and make a punishment decision based solely on the facts and the law. These are not inconsistent views, nor are they disqualifying.

Wilson is also mistaken to argue that Juror #1443 contradicted her statements concerning her religious beliefs. In her questionnaire, Juror #1443 indicated that it might be difficult to impose the death penalty because "[g]enerally our 'creator' only can 'take life.'" (Questionnaire Response #42.) But in this same answer, Juror #1443 stated, "We still have laws to be obeyed in a society, to keep order." (Id.) In other words, Juror #1443 may have some moral or religious hesitation regarding the death penalty, but can put aside such concerns in the name of following the law and her duty as a juror, a position explicitly sanctioned by the Supreme Court. See Witherspoon v. Illinois, 391 U.S. 510, 515 n.9 (1968) ("Obviously many jurors 'could, notwithstanding their conscientious scruples (against capital punishment), return . . . (a) verdict (of death) and . . . make their scruples subservient to their duty as jurors." (alterations in original) (citation omitted)). Thus, Juror #1443's statements at voir dire disclaiming any difficulty imposing the death penalty are entirely consistent with her questionnaire responses.

Additionally, Juror #1443's other views reflected in her questionnaire do not contradict those given at voir dire, providing the court with further confidence that she could follow its instructions and allow for meaningful use of peremptory strikes. (Compare Questionnaire Response #46(b) with May 23, 2013, Hr'g Tr. at 2946:6-12; 2593:15-17; see also May 23, 2013, Hr'g Tr. at 2950:16-2951:1 (concerning Questionnaire Response #42); id. at 2953:18-25

5

(concerning Questionnaire Response #47); id. at 2954:12-24 (concerning Questionnaire Response #48).)

In short, Juror #1443 has not presented "sharply contrasting" views at voir dire that would leave the court with "no confidence in what [Juror #1443's] true views are." (May 9, 2013, Mem. & Order (Dkt. 1168) (striking Juror #675 who, among other things, changed his position on the 1-to-7 scale from "6" on his questionnaire to "3" at voir dire with no explanation).) The court found Juror #1443 to be thoughtful, open-minded, and capable of meaningfully considering all mitigation evidence and imposing either possible sentence. She did not transform from someone who generally supports capital punishment to one who would struggle to impose the death penalty (cf. id), or vice versa. Rather, at voir dire Juror #1443 clarified certain views and expressed her ability to put aside others in order to follow the law and the court's instructions. This is precisely what is expected from a qualified juror. Wilson's motion is therefore denied.

## IV. CONCLUSION

Wilson's motion to strike Juror #1443 for cause is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      May 28, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge