UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

      Defendant.

----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Before the court is the Government's motion to strike Juror #1494 for cause. For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND[1]

  The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

  The Government argues that Juror #1494 is unqualified because he could never impose a death sentence in this case. Wilson maintains that despite Juror #1494's admitted hesitation in imposing the death penalty, he is still able to meaningfully consider imposing the ultimate punishment.

## II. DEATH QUALIFICATION

  "[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Morgan v. Illinois, 504 U.S. 719, 728 (1992) (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)). "[I]t does not make sense to require simply that a juror not 'automatically' vote against the death penalty; whether or not a venireman *might* vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge." Witt, 469 U.S. at 422-24 (emphases in original); see also Uttecht v. Brown, 551 U.S. 1, 18 (2007) ("[A juror's] assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case . . . .").

## III. DISCUSSION

The Government moves to strike Juror #1494 for cause. That motion is granted.

In his questionnaire, Juror #1494 rated himself as a "2" on the 1-to-7 scale, with "1" representing "Strongly Opposed to the Death Penalty" and "7" representing "Strongly in Favor of the Death Penalty." (Questionnaire Response #38.) He explained these views by writing, in part, "I may not be totally opposed to the death penalty but to be honest I am not sure." (Id. #39.) Also, when asked on the questionnaire whether anything about his religious beliefs would make it difficult to impose the death penalty, Juror #1494 checked "Yes," explaining, "It may; as a Christian[,] life is a gift from God and it would be a tough decision." (Id. #52; see also id. at #53 (writing "Uncertain" when asked whether he had any "moral or philosophical opposition to the death penalty" that would make him unable to impose that penalty).)

At voir dire, the court asked Juror #1494 to expound on his views on the death penalty. (May 24, 2013, Hr'g Tr. at 3077:23-24.) He stated, "You know, I've never had to sit in that

2

situation, make the decision, so I wouldn't know until I was there, but [I am] certainly not comfortable with making that decision, and I typically would lean toward not voting for it, to be honest." (Id. at 3077:25-3078:4.) The court later asked Juror #1494 whether after hearing all the evidence, if he "conclude[d] that the aggravating evidence is so severe and serious that the death sentence is the only appropriate sentence for this defendant, could [he] vote for a sentence of death for someone who murdered two individuals." (Id. at 3080:3-8.) Juror #1494 hesitated and replied tentatively, "I don't know, to be honest, you know, until I heard everything. I just don't know." (Id. at 3080:9-10; cf. id. at 3083:4-14 (when asked about the role of mercy, stating, "I wouldn't really know how to answer that until—unless I sat here and heard all the facts of the case. Even then, to be honest, I don't know which way I would vote").)

The court later inquired into Juror #1494's religious views, asking about the position of his religion on the appropriateness of a juror to impose the death penalty. (See id. at 3083:15-3084:6.) He answered,

> Well, that's—it's a tough, real tough, question. You know, it's one that I personally—I would just have to pray a lot about. As you noted on this, that I circled a two because I'm not 100 percent against it, but I'm closer to against the death penalty than I am for it.

(Id. at 3084:7-12; see also id. at 3083:5-6 (describing himself as "very religious").)

Given these exchanges, the court is left with the firm conviction that although Juror #1494 did not affirmatively state that he could *never* impose the death penalty, his views on capital punishment "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Morgan, 504 U.S. at 728. Importantly, Juror #1494 never indicated that he could impose the death penalty in this or any other case. Indeed, when asked whether he could ever impose the death penalty if he believed the aggravating factors outweighed the mitigating factors—i.e., under the Federal Death Penalty Act,

3

the death penalty is deserved—Juror #1494 could not confirm his ability to do so. Moreover, when asked whether there are "any kinds of intentional premeditated murder where [he] think[s] the death penalty would be an appropriate penalty," the only example Juror #1494 could identify was if an individual kidnaped, raped, and killed children. (See May 24, 2013, Hr'g Tr. at 3078:5-20.)

Based only on his answers provided in his questionnaire and at voir dire, it is not entirely clear whether Juror #1494 could meaningfully consider the death penalty as a viable option. Having observed Juror #1494 in person, however, the court is left with the firm impression that despite any indication to the contrary, this prospective juror could never impose the death penalty in this or any other case. See Uttecht, 551 U.S. at 18 ("[A juror's] assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case . . . ."). His ambiguous answers regarding whether he would possibly vote to impose the death penalty were given after much hesitation and internal debate. See id. at 7 ("[W]hen there is ambiguity in the prospective juror's statements, 'the trial court, aided as it undoubtedly [is] by its assessment of [the venireman's demeanor], [is] entitled to resolve it in favor of the State.'" (citation omitted)). Accordingly, the Government's motion is granted.

## IV. CONCLUSION

The Government's motion to strike Juror #1494 is GRANTED.

SO ORDERED.

/s/ Nicholas G. Garaufis
Dated: Brooklyn, New York      NICHOLAS G. GARAUFIS
May 28, 2013      United States District Judge

4