UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are the Government's motion to strike Juror #1672 and Defendant Ronell Wilson's motion to strike Juror #1675. For the reasons set forth below, both motions are DENIED.

**I.    BACKGROUND**[1]

The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

**A.    Juror #1672**

The Government moves to strike Juror #1672 for cause and argues that she has prejudged this case. Specifically, the Government contests that because Juror #1672 stated that she was "not surprised" by the fact that Wilson is African-American, she could not set aside her feelings concerning race and socio-economic status. Wilson disagrees and maintains that she can fairly consider the facts in this case.

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

### B. Juror #1675

Wilson argues that Juror #1675 must be struck because he has breached his anonymity. Specifically, Wilson argues that because Juror #1675 identified his partner's employer and job title, his anonymity has been sufficiently compromised. The Government opposes, maintaining that the likelihood that anyone could identify this prospective juror is extremely low.

## II. STANDARD OF REVIEW

### A. Bias or Partiality

A prospective juror may be excused for cause based on many forms of bias or partiality. As the Second Circuit has explained,

> Juror partiality can . . . take various forms: actual, implied, or inferred. See United States v. Torres, 128 F.3d [38,] 43 [(2d Cir. 1997)]. Actual bias is "bias in fact," id., generally evidenced by "express proof," such as a juror's admission to "a state of mind prejudicial to a party's interest." United States v. Haynes, 398 F.2d [980,] 984 [(2d Cir. 1968)]. Implied bias is "bias conclusively presumed as a matter of law" from circumstances in which an average person in the position of the prospective juror would be prejudiced. United States v. Torres, 128 F.3d at 45. Inferred bias exists "when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." Id. at 47.

United States v. Quinones, 511 F.3d 289, 301 (2d Cir. 2007). "While blunt acknowledgment of bias may support removal without further inquiry, the more ambiguous a prospective juror's responses, the more useful demeanor, and thus oral inquiry, become in allowing a trial judge to identify partiality warranting removal for cause." Id. at 301-02.

### B. Breach of Anonymity

Throughout the course of voir dire, the court, typically with the parties' consent, has struck prospective jurors who have provided certain identifying information that compromised their anonymity. Most such jurors provided their specific employer, their job title, and/or the

address at which they work such that their identities could be readily determined.

Far fewer jurors have been struck for breach of anonymity because of information they offered concerning their spouses or partners. For instance, the court struck Juror #1219 on consent of the parties because he identified his spouse as the "executive director of the Council for Arts and Humanities in Staten Island." (May 17, 2013, Hr'g Tr. at 2252:17-2253:9.) Simple Internet research provided not only the spouse's name, but also her photograph. The court also struck Juror #961 on consent of the parties on hardship grounds and for breach of anonymity because he identified his wife as a chef at a local restaurant. (See May 13, 2013, Hr'g Tr. at 2042:24-2043:21.) Likewise, the court struck Juror #223 on consent of the parties because the juror had identified her husband's employer and stated that only seven people work at her husband's particular location. (See Apr. 25, 2013, Hr'g Tr. at 599:2-600:4.)

On the other hand, the court did not strike Juror #214, who identified her husband's employer and his job title because that company employed thousands across the globe and the court deemed it "extremely unlikely for anyone to determine his name, let alone th[e] juror's." (Id. at 600:5-20.) Similarly, the court asked substantive questions of Juror #429 after he indicated that his spouse worked as a welfare examiner for Nassau County. (See Apr. 30, 2013, Hr'g Tr. at 1033:13-1037:5.) Although Juror #429 believed that there "probably more than five, ten" welfare examiners for Nassau County (id. at 1034:19-20), this prospective juror was struck not for breach of anonymity, but for an inability to consider background mitigation evidence (id. at 1037:14-19).

## III. DISCUSSION

### A. Juror #1672

The Government moves to strike Juror #1672 for cause. That motion is denied.

3

The Government argues that Juror #1672 has prejudged this case given her feelings concerning race and the effects of being raised in a poor neighborhood. On her questionnaire, Juror #1672 indicated that she believed that African-Americans and other minorities are more likely to commit crimes because they are more often part of a lower socio-economic class. (See Questionnaire Response #68.)

At voir dire, Juror #1672 stated that one's childhood experiences "shape how we become adults and how we behave as adults and how we function in society." (May 29, 2013, Hr'g Tr. at 3400:8-11; see also Questionnaire Response #46.) The court then broached the subject of race, and asked Juror #1672 whether her beliefs would "cause [her] to have a bias against an African-American defendant." (May 29, 2013, Hr'g Tr. at 3407:4-7.) Juror #1672 replied, "Well, honestly, I am not surprised that the defendant is of African-American descent, because . . . just working in the field [of school psychology] . . . the trends are that people who do commit crimes do come from neighborhoods of poverty and less financial support, familial support, and those people who happen to inhabit those neighborhoods are people of African-American [descent] or Latinos." (Id. at 3407:8-16.) The court then asked whether such observations "would make it difficult for [her] to be fair and impartial in considering the evidence in a case where the defendant is an African-American," to which Juror #1672 replied, "I—I don't think so." (Id. at 3408:2-7.)

Given this colloquy, the court does not believe that Juror #1672 has prejudged this case or exhibited any bias. Given Juror #1672's work as a school psychologist, she may be particularly receptive to certain mitigating factors concerning Wilson's background. But as the court has refused to strike prospective jurors who have indicated that certain aggravating factors are particularly persuasive (see generally May 24, 2013, Mem. & Order (Dkt. 1221)), it will not

4

strike Juror #1672 because she seems to imply that African-Americans are more likely to commit crimes because of social factors. For someone who may have been exposed in her line of work to such issues, it is not at all unexpected (or problematic) that she is "not surprised" by the fact that Wilson is African-American—a perspective rooted in socio-economic views, not racism or bias. Rather, she credibly indicated that her views on race would not affect her ability to be fair and impartial. Accordingly, the Government's motion is denied.

B.   Juror #1675

Wilson moves to strike Juror #1675 for breach of anonymity. That motion is denied.

In his questionnaire, Juror #1675 was asked to describe his "spouse/partner's occupation." (Questionnaire Response #12.) He wrote, in relevant part, "financial analyst—Remy Cointreau." (Id.) At voir dire, the court asked Juror #1675 how many financial analysts are at Remy Cointreau. (May 29, 2013, Hr'g Tr. at 3417:3-4.) He was unsure, but stated, "I mean, they got ten, maybe." (Id. at 3417:5-8.) Based on this information, Wilson argues that Juror #1675's anonymity has been breached. The court disagrees.

Most importantly, unlike the vast majority of jurors who have been struck for breach of anonymity, Juror #1675 has provided information concerning his partner, not himself. Moreover, it is unclear whether an interested party could even ascertain Juror #1675's partner's identity. For one thing, no one knows whether Juror #1675's partner is a man or a woman or whether Juror #1675 and his partner share a last name. Also, unlike other situations, Internet research does not turn up Juror #1675's partner's name, whether individually or as part of a small group. (Cf. May 17, 2013, Hr'g Tr. at 2252:17-2253:9 (concerning Juror #1219).) Although one can likely identify the location of the employer of Juror #1675's partner, this is a massive office building, further reducing the likelihood that anyone could determine the identity

5

of (much less confront) this person at his/her place of business.  (Cf. Apr. 25, 2013, Hr'g Tr. at 599:2-600:4 (concerning Juror #223, whose husband worked with only six other employees at a particular location); May 13, 2013, Hr'g Tr. at 2042:24-2043:21 (concerning Juror #961, who identified his wife as a chef at a small restaurant).)  One would have to ascertain a list of all financial analysts at Remy Cointreau and identify which is Juror #1675's partner in order to have any impact on this case; this is extremely doubtful.

Accordingly, the court believes that it is exceedingly unlikely that anyone could identify Juror #1675's partner, let alone Juror #1675.  As with Juror #214 and Juror #429, the court does not believe that there is any reasonable chance that Juror #1675's anonymity has been compromised.  (See Apr. 25, 2013, Hr'g Tr. at 600:5-20; Apr. 30, 2013, Hr'g Tr. at 1033:13-1037:5.)  Thus, Wilson's motion is denied.

**IV. CONCLUSION**

The Government's motion to strike Juror #1672 and Defendant Ronell Wilson's motion to strike Juror #1675 are DENIED.

SO ORDERED.

Dated: Brooklyn, New York
May 31, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge