UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

UNITED STATES OF AMERICA

              -against-

RONELL WILSON,

              Defendant.

------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**04-CR-1016 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is the Government's motion to strike and/or combine certain mitigating factors proposed by Defendant Ronell Wilson.[1] For the reasons set forth below, the Government's motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**[2]

Prior to the first penalty phase, upon motion of the Government, the court ordered that Wilson's proposed list of 35 mitigating factors be combined and modified into a final list of 20 factors. (Jan. 26, 2007, Mem. & Order (Dkt. 300).)

Prior to the penalty phase re-trial, the Government has again moved to combine and/or strike Wilson's proposed mitigating factors. (Gov't Mitig. Mem. (Dkt. 1138).) At Wilson's request (see Apr. 29, 2013, Def. Ltr. (Dkt. 1147)), the court heard oral argument on the Government's motion, during which the defense opposed any form of combination (see June 13, 2013, Hr'g Tr. at 4040:19-4045:11). Wilson's proposed mitigators are:

---

[1] The parties submitted their papers concerning the Government's motion under seal but discussed their contents in open court. Accordingly, this Memorandum and Order is not sealed.

[2] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

1. If not sentenced to death, Ronell will be in prison for the remainder of his life without the possibility of release.

2. Ronell's maternal aunts were addicted to crack and alcohol.

3. From age five to age fifteen, Ronell was raised in Queensbridge, a community where drugs, guns and violence were prevalent.

4. The favorable plea agreements offered to the cooperating witnesses is something that weighs against imposition of a death sentence for Ronell.

5. But for Michael Whitten and Omar Green, Ronell would not have been involved in the murders.

6. Ronell's father, Robert Earl Barnes, was an alcoholic.

7. Ronell acted young for his age.

8. School classified Ronell as emotionally disturbed and learning disabled.

9. At age twenty-one months Ronell was hospitalized for fifteen days with bacterial meningitis.

10. Ronell was placed in foster care at the age of five as a result of his mother's neglect.

11. Ronell was susceptible to negative peer influence.

12. Ronell's cousin, brother and some members of the community introduced Ronell to criminal activity.

13. At age fourteen, Cheryl Wilson, Ronell's mother, was ill equipped to begin a family.

14. Ronell behaved respectfully in court.

15. Ronell was inducted into gang culture when he was thirteen years old.

16. Ronell had [a] loving relationship with his nieces and nephews.

17. In Stapleton, Ronell lived in a three-bedroom apartment with thirteen people.

18. Ronell is the only defendant in the case facing life in prison without the possibility of release.

19. Ronell's childhood and early adolescence. [sic]

20. The Federal Bureau of Prisons can impose adequate restrictions on Ronell Wilson.

21. Ronell had few positive role models.

22. Ronell's maternal aunts committed acts of violence in front of him.

23. While pregnant with Ronell, his mother abused drugs and alcohol.

24. Life in federal prison without the possibility of release is a harsh punishment.

25. Ronell was in outpatient therapy at Queens County Neuropsychiatric Institute for six years.

26. Ronell has held jobs while he was incarcerated.

27. Ronell's stepfather, Richard Hadden, was a drug dealer.

28. For the first two years of his life, Ronell lived in an abandoned building.

29. Ronell was not the leader or organizer of this group.

30. When he was a young child, Ronell's mother used him to shoplift.

31. At age nineteen, Ronell had difficulty filling out job applications.

32. Ronell did not believe the victims were police officers.

33. Ronell's father was not a consistent presence in his life.

34. At age seventeen, Ronell's best friend was shot and killed in Staten Island.

35. Ronell's execution would cause others to suffer grief and loss.

36. Ronell's mother and aunts exposed Ronell to their criminal activity.

37. Throughout his childhood, Ronell had friends who died as a result of violence in the community.

38. In his four years at Terre Haute, Ronell had no violent infractions.

39. Ronell was twenty years old at the time of the crime.

40. Although well intentioned, Ronell's foster mother, Lillian Barnes, was ill equipped to handle Ronell's needs as a child and adolescent.

41. For the first two years of his life, Ronell was raised in a home with a violent and abusive father.

42. Ronell was admitted to the psychiatric unit at Elmhurst for the third time at age eleven.

43. While living in Queensbridge, Ronell continued to visit family and friends in Stapleton.

44. Ronell's mother had a long history of drug and alcohol addiction.

45. Ronell's life has value.

46. At age three, Ronell moved into the Stapleton Houses in Staten Island where drugs, crime, gangs and poverty were present (prevalent) [sic].

47. Ronell was admitted to the psychiatric unit at Elmhurst twice at age six for threats of suicide.

48. Ronell was in special education from age six until age seventeen.

49. Ronell was repeatedly exposed to violence in his home and community in Staten Island.

50. At age 19, Ronell could not pass the requirements for a pre-GED test.

51. Ronell had loving relationships with Monica Cook's children.

52. The Bureau of Prison[s'] mental health staff has consistently reported that Ronell has satisfactorily adjusted to prison.

(See Gov't Mitig. Mem. at 2-5; June 17, 2013, Def. Ltr. (Dkt. 1303).) Wilson opposes any consolidation, arguing that the Government's proposed mitigating factors are overbroad and therefore confusing. (See June 13, 2013, Hr'g Tr. at 4040:22-4042:9.) He maintains that it is sufficient to instruct the jury to consider the mitigating factors' weight, not their quantity. (See id. at 4041:24-4042:1.)

## II. DISCUSSION

### A. The Need to Combine Overlapping Mitigating Factors

As the court held before the initial penalty phase, presenting the jury with a multitude of overlapping mitigating facts will impermissibly skew the weighing process required by the

Federal Death Penalty Act. (See Jan. 26, 2007, Mem. & Order.) Even if the jury is instructed to focus on the weight (not the sheer number) of mitigating factors, the likelihood of confusion is too great. See United States v. Taveras, No. 04-CR-156 (JBW), 2006 WL 1875339, at *9 (E.D.N.Y. July 5, 2006) (describing the defendant's 107 proposed mitigating factors as "far too detailed a list" and proposing a list of seven mitigating factors which, "while still somewhat specific, better reflect practice in this circuit"); cf. United States v. McCullah, 76 F.3d 1087, 1111-12 (10th Cir. 1996) (holding that presentation of "duplicative and cumulative aggravating factors" was erroneous because "[s]uch double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process" and "the mere finding of an aggravating factor cannot but imply a qualitative value to that factor").

Wilson's arguments to the contrary are unpersuasive, and fail to account for the critical distinction between facts and factors. Just as the court would not permit the Government to identify each of Wilson's prison infractions as independent aggravating factors—specific facts that, taken as a whole, may support a finding that Wilson is a future danger—the converse applies to Wilson. He cannot seek to identify hyper-specific incidents in his childhood as separate reasons to impose a life sentence.

Moreover, Wilson's concern about confusing and compound mitigating factors is misplaced. While the court will not create mitigating factors so complex as to confuse the jury, the court notes that Wilson himself proposed mitigating factors that are, strictly speaking, compound, which reflects the appropriateness of such factors. For instance, by Wilson's logic, his third proposed mitigating factor ("From age five to age fifteen, Ronell was raised in Queensbridge, a community were drugs, guns and violence were prevalent") is confusing because the jury would be required to find that drugs, guns, *and* violence were prevalent in

5

Queensbridge. (See Proposed Mitigating Factor #3.) If, say, only drugs were prevalent in that community, the jury would have to conclude that the mitigating factor was not established. Similarly, for the jury to find that Wilson proved his fifth mitigating factor, it would have to find that "Ronell would not have been involved in the murders" but for "Michael Whitten *and* Omar Green." (Id. #5 (emphasis added); see also id. #2 ("Ronell's maternal *aunts* were addicted to crack and alcohol." (emphasis added)); id. #8 ("School classified Ronell as emotionally disturbed *and* learning disabled." (emphasis added)); id. #12 ("Ronell's cousin, brother *and* some members of the community introduced Ronell to criminal activity." (emphasis added)); id. #16 ("Ronell had loving relationship[s] with his nieces *and* nephews." (emphasis added)).)

This underscores that a proper mitigating factor may be dependent on multiple facts. A mitigating factor is a particular *reason* why the death sentence is not warranted. To establish such reason, it is often necessary to prove multiple, specific facts. Indeed, Congress and other courts have recognized as much. See 18 U.S.C. § 3592(a)(2) (identifying the following mitigating factor: "The defendant was under unusual *and* substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge." (emphasis added)); Taveras, 2006 WL 1875339, at *9 (proposing the following mitigating factor: "As a child, defendant was a victim of physical, sexual, and emotional abuse; suffered extreme poverty and deprivation; and was affected by his father's mental illness").[3]

Accordingly, the court will combine overlapping facts into specific, reasonable, and comprehensible mitigating factors as set forth below.

---

[3] Should Wilson prefer to recast specific mitigating factors in more general terms to avoid any possibility of confusion, the court is willing to entertain such an application.

### B. Overlapping Mitigating Factors

#### 1. Wilson's Poor Upbringing

In 2007, the court ordered the use of the following four mitigating factors concerning Wilson's poor upbringing: "Ronell Wilson's parents were substance abusers which resulted in poor parenting, an unstable and chaotic living environment, and separation of his family"; "During his early childhood Ronell Wilson was exposed to an unsafe and unsanitary home environment"; "Ronell Wilson was exposed to drugs and violence as a child and adolescent"; and "Ronell Wilson grew up in poverty and deprivation." (See Jan. 26, 2007, Mem. & Order at 10 (detailing mitigating factors #3, #4, #6, and #7).)

These same four factors can be used to encompass the following 19 proposed mitigating factors that also concern Wilson's impoverished childhood: Proposed Mitigating Factor #2, #3, #6, #10, #13, #17, #19, #21, #22, #23, #27, #28, #33, #40, #41, #43, #44, #46, and #49.

#### 2. Wilson's Psychiatric Issues

Wilson has proposed three separate mitigating factors that all concern Wilson's treatment for psychiatric issues: #25, #42, and #47.

These can be combined into a single, less confusing mitigating factor, which is similar to the eighth mitigating factor used for the original penalty phase in 2007 (see id.): "During his childhood, Ronell was admitted to hospitals on at least four occasions for psychiatric care, and attended outpatient therapy for six years."

#### 3. Wilson's Introduction to Criminal Activity

The following five mitigating factors proposed by Wilson all concern his susceptibility to peer pressure and his introduction to violence by family members: #11, #12, #15, #30, and #36.

These can be recast as a single factor, which more appropriately captures the theme

underlying each of these specific facts: "Ronell was susceptible to negative peer influence and introduced to criminal activity by his family members at an early age."

4. <u>Wilson's Learning Difficulties</u>

Wilson has proposed five mitigating factors that all concern Wilson's delayed learning: #7, #8, #31, #48, and #50.

These are better considered as two separate mitigating factors: "Ronell acted young for his age,"[4] and "Ronell was placed in special education classes from age six until age seventeen, and he was classified as emotionally disturbed and learning disabled."

5. <u>Wilson's Relationships</u>

The following four mitigating factors all concern the value of Wilson's life and the pain that would be caused if he were executed: #16, #35, #45, and #51.

These are all subsumed by the following two mitigating factors: "Ronell's life has value" and "Ronell had a loving relationship with friends and family members, who will suffer grief and loss if he is executed." (<u>See</u> Jan. 26, 2007, Mem. & Order at 10.)

6. <u>The Loss of Wilson's Close Friends</u>

Wilson has proposed mitigating factors concerning the fact that Wilson's close friends were killed during his youth: #34 and #37.

Because #34 is completely subsumed by #37, proposed mitigating factor #34 is stricken.

7. <u>Wilson's Adjustment to Prison</u>

Three proposed mitigating factors all relate to Wilson's adjustment to prison life: #26, #38, and #52.

---

[4] The Government contends that proposed mitigating factor #31 (concerning Wilson's inability to complete job applications) should be stricken because it is subsumed by the combination of proposed factors #8 and #48 (both concerning Wilson's classification in school). Because the court permits Wilson to include a mitigating factor indicating that he acted young for his age, however, the court strikes proposed mitigating factor #31.

8

Accordingly, the following mitigating factor used for the original penalty phase (see id. at 11) best captures these specific facts: "Ronell has adjusted well to federal prison."

\* \* \*

This consolidation does not prevent Wilson from "prov[ing] any fact and mak[ing] any argument he believes to be mitigating within the general parameters of his list." Taveras, 2006 WL 1875339, at *9. (See also Jan. 26, 2007, Mem. & Order at 7 ("[T]he court is not precluding the defense from describing, during its summation, any evidence relevant to any mitigating factor.").) Rather, "[t]he court is merely seeking to streamline its charge so as to prevent the jury, which will receive a copy of the court's charge, from entering its deliberations with a list of aggravating factors in one hand and a list of mitigating facts (rather than factors) in the other."[5] (Jan. 26, 2007, Mem. & Order at 7.)

### C. Specific Government Objections

In addition to requesting that the court combine certain factors, the Government has moved to strike proposed mitigating factors #4, #5, and #24. (Gov't Mitig. Mem. at 9-10.)

As to factor #4 ("The favorable plea agreements offered to the cooperating witnesses is something that weighs against [the] imposition of a death sentence for Ronell") the Government points to the court's ruling at the original penalty phase that precluded inquiry into co-defendants' specific sentences. (See id. (citing Jan. 24, 2007, Hr'g Tr. at 1492:10-1493:25).)

The court again holds that co-defendants' "favorable" plea agreements are not proper mitigating factors. For one thing, they do not concern Wilson's "background, record, or character or any other circumstance of the offense." 18 U.S.C. § 3592(a); cf. id. § 3592(a)(4) ("Another defendant or defendants, equally culpable in the crime, will not be punished by

---

[5] Should Wilson wish to strike any of the mitigating factors the court has crafted above or offer any wording changes, he may so inform the court.

death."). Additionally, a co-defendant's plea agreement is the product of many factors—including one's cooperation, prior criminal history, and personal circumstances—independent of culpability. To properly consider other defendants' plea agreements and specific sentences would likely mislead the jury and cause them to unfairly speculate as to all of those sentencing factors. See 18 U.S.C. § 3593(c). Instead, the appropriate mitigating factor is that Wilson is the only defendant facing the death penalty or life in prison without the possibility of release. Thus, the court modifies Proposed Mitigating Factor #18 ("Ronell is the only defendant in the case facing life in prison without the possibility of release") to reflect that Wilson is the only defendant in this case facing either sentence. Accordingly, the Government's motion to strike proposed mitigating factor #4 is granted, and factor #18 is modified as set forth above.

As to proposed mitigating factor #5 ("But for Michael Whitten and Omar Green, Ronell would not have been involved in the murders") the Government argues that this factor is "misleading and contrary to the evidence at trial." (Gov't Mitig. Mem. at 10.) However, this factor is not inconsistent with the prior jury's guilty verdict. The Government's belief that Wilson is factually incorrect is not a sufficient reason to prevent the jury from considering such evidence. Of course, the Government may rebut this mitigating factor and present evidence establishing that Wilson "single-handedly decided to kill the detectives." (Id.) But the jury's consideration of this mitigating factor is appropriate.

Finally, the Government moves to strike proposed mitigating factor #24 ("Life in federal prison without the possibility of release is a harsh punishment") because it is an "improper mitigating factor and is subsumed by factor 1." (Id.) Proposed mitigating factor #24 is related to proposed mitigating factor #1, which provides, "If not sentenced to death, Ronell will be in prison for the remainder of his life without the possibility of release." But it also adds a

qualitative description of a life sentence not currently present. Thus, the proper mitigating factor is: "If not sentenced to death, Ronell will be in prison for the remainder of his life without the possibility of release, which is a harsh sentence."

## III. CONCLUSION

For the reasons set forth above, the court will instruct the jury to consider the following 22 mitigating factors:

1. If not sentenced to death, Ronell will be in prison for the remainder of his life without the possibility of release, which is a harsh sentence.

2. Ronell parents were substance abusers, which resulted in poor parenting, an unstable and chaotic living environment, and separation of his family.

3. During his early childhood, Ronell was exposed to an unsafe and unsanitary home environment.

4. Ronell was exposed to drugs and violence as a child and adolescent.

5. Ronell grew up in poverty and deprivation.

6. But for Michael Whitten and Omar Green, Ronell would not have been involved in the murders.

7. Ronell acted young for his age.

8. Ronell was placed in special education classes from age six until age seventeen, and he was classified as emotionally disturbed and learning disabled.

9. During his childhood, Ronell was admitted to hospitals on at least four occasions for psychiatric care, and attended outpatient therapy for six years.

10. At age twenty-one months, Ronell was hospitalized for fifteen days with bacterial meningitis.

11. Ronell was susceptible to negative peer influence and introduced to criminal activity by his family members at an early age.

12. Ronell behaved respectfully in court.

13. Ronell's life has value.

14. Ronell had a loving relationship with friends and family members, who will suffer grief and loss if he is executed.

15. Ronell is the only defendant in the case facing life in prison without the possibility of release or the death sentence.

16. The Federal Bureau of Prisons can impose adequate restrictions on Ronell.

17. Ronell has adjusted well to federal prison.

18. Ronell was not the leader or organizer of this group.

19. Ronell did not believe the victims were police officers.

20. Throughout his childhood, Ronell had friends who died as a result of violence in the community.

21. Ronell was twenty years old at the time of the crime.

22. There are other factors in Ronell's background and other circumstances of his offenses that mitigate against the imposition of the death penalty.[6]

SO ORDERED.

    /s/ Nicholas G. Garaufis
Dated: Brooklyn, New York    NICHOLAS G. GARAUFIS
       June 17, 2013    United States District Judge

---

[6] Although Wilson did not identify this particular mitigating factor, it should be included pursuant to 18 U.S.C. § 3592(a)(8). (See Jan. 26, 2007, Mem. & Order at 11.) See also Taveras, 2006 WL 1875339, at *9.